UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LA'KEEMON DIXON and HOUSING
OPPORTUNITIES MADE EQUAL, INC.,

               Plaintiffs,

v.

**DECISION AND ORDER**
11-CV-30S

DEMYAN MUCHNIK, GALINA MUCHNIK,
and SEMYON ZISKIND,

               Defendants.

## I. INTRODUCTION

On January 10, 2011, Plaintiffs La'Keemon Dixon and Housing Opportunities Made Equal, Inc. ("Home") commenced this civil rights action by filing a Complaint in the United States District Court for the Western District of New York. Therein, Plaintiffs allege two causes of action relating to alleged discrimination in the sale or rental of a property Plaintiff Dixon was interested in renting. Presently before this Court is Defendant Semyon Ziskind's Motion to Dismiss.[1] For the reasons discussed below, Defendant's Motion to Dismiss is denied.

## II. BACKGROUND

**A.**    **Facts**

In adjudicating Defendant's Motion to Dismiss, this Court assumes the truth of the

---

[1] In support of his Motion to Dismiss, Ziskind filed a Memorandum of Law; the Affidavit of Semyon Ziskind, with Exhibits; and the Affidavit of Richard G. Berger, Esq. (Docket Nos. 11, 17.) In opposition to Ziskind's motion, Plaintiffs filed a Memorandum of Law; the Affirmation of Margo M. Lagueras, Esq., with Exhibits; and the Affidavit of La'Keemon Dixon, with Exhibits. (Docket Nos. 13, 14, 15.)

1

following factual allegations contained in Plaintiffs' Complaint. See Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 740, 96 S. Ct. 1848, 1850, 48 L. Ed. 2d 338 (1976); see also Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll., 128 F.3d 59, 63 (2d Cir. 1997).

Plaintiff La'Keemon Dixon is an African-American woman. (Complaint ("Comp."), Docket No. 1, ¶ 4.) At the time of the acts complained of, she was 32 years old, the mother of five children, and a resident of Buffalo, New York. (Id. ¶ 4.) Home is a not-for-profit corporation incorporated under the laws of New York with its principal place of business in Buffalo, New York. (Id. ¶ 6.) Defendants Demyan and Galina Muchnik are the owners of a property located at 259 Paradise Road, East Amherst, County of Erie, New York (the "property"). (Id. ¶ 9.) Defendant Ziskind is a resident of Williamsville, New York, and acted under the names "Sam," "Mr. Zisk," and Ziskind throughout the events relevant to this action. (Id. ¶¶ 11, 19, 26, 29.)

1. La'Keemon Dixon

On March 4, 2009, Dixon responded to an advertisement on the website Craigslist, advertising for rent or purchase a 4-bedroom house. (Id. ¶ 19.) Dixon called Ziskind at the number listed and made an appointment to view the premises the same day. When Dixon arrived at the house, Ziskind was not present. (Id. ¶ 21.) Dixon was instead invited in by Demyan and Galina Muchnik who appeared startled by her arrival. (Id.) The pair proceeded to ask how many children Dixon had before stating that they were going to sell rather than rent, but that Dixon could call back after March 15, 2009 for their final decision. (Id. ¶ 22.) Ziskind called Dixon after the viewing, and Dixon informed him that she had been asked to follow up directly with the Muchniks. (Id. ¶ 23.)

Dixon called the Muchniks back on March 16, 2009. (Id. ¶ 24.) Galina did not

remember Dixon initially, but eventually informed Dixon that they had decided to sell. (Id. ¶ 24.) In response, Dixon notified Home and reported her situation. Throughout the period from March 17, 2009 to April 3, 2009 the property continued to be advertised on Craigslist, with Ziskind still listed as the contact. (Id. ¶ 26.) In response to Dixon's report, Home initiated an investigation employing two testers to respond to Ziskind's ad. (Id. ¶ 28.)

### 2. Tester #1

Tester #1 was an African-American female working together with Home to investigate Defendants and played the role of a single mother with four children. (Id. ¶ 29.) On March 30, 2009 she called Ziskind in regards to the property and made an appointment to view it on March 31, 2009. When Tester #1 arrived the following day Ziskind was not present, but she was greeted by a pair who introduced themselves as Remma and Damien. (Id. ¶ 30.) Another unidentified female present inquired whether Tester #1 had children and was married. (Id. ¶ 31.) Tester #1 was also asked whether she was interested in potentially buying the premises. (Id.) When Tester #1 asked about the application process for the property, she was directed to contact Ziskind because he had the applications. (Id. ¶ 32.) Ziskind was identified by the women present as their realtor. (Id.)

Tester #1 called Ziskind the next day, April 1, 2009, in regards to submitting an application. Ziskind did not answer and Tester #1 left a message. (Id. ¶ 33.) On April 3, 2009, after Ziskind still had not called her back, Tester #1 called again. (Id. ¶ 34.) This time, Ziskind answered, and set up an appointment for April 4, 2009 to meet Tester #1 at a predetermined address. (Id.) When Tester #1 showed up at the location and time, however, Ziskind was not present. (Id. ¶ 35.) Tester #1 called Ziskind, who informed her

that he had not yet left his home and was some distance away, but that he would call her later to make another appointment. (Id. ¶ 35.)

Ziskind did not call Tester #1 back until April 12, 2009. (Id. ¶ 36.) At that time, he did not schedule a new appointment, but instead inquired whether Tester #1 was still looking for an apartment. When she responded that she was, Ziskind stated that a different property in North Buffalo was available. When questioned regarding the property Tester #1 had visited, Ziskind responded that the owners had decided to sell it. (Id.)

### 3. Tester #2

Tester #2 was a Caucasian female working together with Home to investigate Defendants and played the role of a single mother with an adult daughter. (Id. ¶ 37.) Tester #2 contacted Ziskind through the advertisement on March 30, 2009 and made an appointment to view the property on April 2, 2009. (Id.) While setting up the appointment, Ziskind also asked Tester #2 who would occupy the house, to which Tester #2 replied that the house would be occupied by herself, her daughter, and three grandchildren. (Id. ¶ 38.) Tester #2 inquired when the property would be available, and Ziskind answered that she could move in whenever she wanted. (Id.)

Tester #2 visited the property on April 2, 2009 and met Galina. (Id. ¶ 39.) Ziskind, who Galina identified as her rental agent, was again not present. (Id.) Galina showed Tester #2 the premises, inquired who would be living with Tester #2, and informed her that the property would be available in two days. (Id. ¶ 40.) That same day, Ziskind called Tester #2 and stated that Galina wanted to rent the property to her. (Id.)

Following these events, on July 6, 2009, Dixon filed a complaint with the United States Department of Housing and Urban Development. (Id. ¶¶ 13, 14.) The complaint

4

was processed by the New York State Division of Human Rights, which determined that there was no probable cause to support the allegations and dismissed the complaint. (Id. ¶ 16.)[2]

## B. Procedural History

Plaintiffs commenced this action on January 10, 2011, by filing a Complaint in the United States District Court for the Western District of New York alleging causes of action arising under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3604 and 3605, and New York State's Human Rights Law ("NYHRL"), N.Y. Exec. Law § 296. Ziskind filed his Motion to Dismiss on February 10, 2011. This Court took the motion under advisement after briefing concluded on March 10, 2011.

## III. DISCUSSION

## A. Legal Standard

Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12 (b)(6). Federal pleading standards are generally

---

[2] The Court notes that attached to Ziskind's Motion to Dismiss are various exhibits, including the Affidavit of Semyon Ziskind, a rental agreement signed between Galina Muchnik and a Beau Braden, and other documents. Similarly, Plaintiffs' response, includes the affidavits of La'Keemon Dixon and the two testers, as well as copies of the various Craigslist advertisements. "Rule 12(b)(6) gives district courts two options when matters outside the pleadings are presented in response to a 12(b)(6) motion: the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment . . . ." Johnson v. Levy, No. 10-CV-3217 (ADS)(ETB), 2011 WL 4375671, at *5 (E.D.N.Y. Sep. 19, 2011) (quoting Kopec v. Coughlin, 922 F.2d 152, 154 (2d Cir. 1991)). Ziskind's motion asks only that the complaint be dismissed pursuant to Rule 12(b)(6). Neither it, nor the accompanying briefs seek conversion of this motion into one for summary judgment. Further, Plaintiffs' responding memorandum identified issues to be explored on discovery. Consequently, this Court will not convert the present motion into a motion for summary judgment, nor will it expand its consideration beyond "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Id. (quoting Leonard F. v. Isr. Disc. Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999)).

not stringent: Rule 8 requires only a short and plain statement of the claim. Fed. R. Civ. P. 8(a)(2). But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544,127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007). When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007); Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008). Legal conclusions, however, are not afforded the same presumption of truthfulness. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 1945 (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility is present when the factual content of the complaint allows for a reasonable inference that the defendant is liable for the misconduct alleged. Iqbal, 129 S. Ct. at 1949. The plausibility standard is not, however, a probability requirement; the pleading must show, not merely allege, that the pleader is entitled to relief. Id. at 1950; Fed. R. Civ. P. 8(a)(2). Well-pleaded allegations in the complaint must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

**B.    Motion to Dismiss**

Plaintiffs' first cause of action alleges that Ziskind violated the FHA by misrepresenting that the property was no longer available because Muchniks intended to

sell it, and by offering to rent the property without requiring an application of Tester #2, but not Tester #1. Plaintiffs' second cause of action alleges that Ziskind violated NYHRL on broadly similar grounds. "The elements of a claim under the NYHRL are the same as under the Fair Housing Act." Echeverria v. Krystie Manor, LP, No. 07-CV-1369, 2009 WL 857629, at *9 (E.D.N.Y. Mar. 30, 2009). Accordingly, this Court will consider Ziskind's motion as to both causes of action under its FHA discussion.

The FHA prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). To establish a *prima facie* case of housing discrimination under the FHA, Plaintiffs must eventually show that (1) they are members of a protected class; (2) they sought, and were qualified, to purchase or rent a home; (3) they were rejected; and (4) the home remained available to other purchasers after they were rejected. Mitchell v. Shane, 350 F.3d 39, 47 (2d Cir. 2003). However, survival of a complaint at the motion to dismiss stage does not require a plaintiff to plead specific facts establishing a *prima facie* case under the McDonnell Douglas burden-shifting framework, as would be required at the summary judgment stage. See Lax v. 29 Woodmere Blvd. Owners, Inc., No. 10-CV-4008 (JFB)(WDW), 2011 WL 4425507, at *6 (E.D.N.Y. Sep. 23, 2011) (discussing impact of Supreme Court's decision in Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) on FHA claims). Thus, all Plaintiffs must do is present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Here, these elements are not disputed. Dixon, as an African American, was a

7

member of a minority. She applied, and was qualified, to rent the property in question. The Muchniks rejected her by stating that they had decided to sell the property. Finally, the property continued being advertised for rental from March 17 to April 3, 2009.

Instead of challenging these elements, Ziskind argues that Plaintiffs' claims should be dismissed as to him because he did not engage in any discriminatory behavior. Ziskind further argues that he had no decision-making authority and did not act as the other defendants' sale agent. Finally, Ziskind argues that neither the FHA nor the NYHRL apply here because the property in question was a single family home. Plaintiffs respond that Ziskind became the Muchnik's agent by helping rent the property and that the Complaint identifies sufficiently discriminatory acts by him.

Contrary to Ziskind's assertions, this Court finds that Plaintiffs have identified several potentially discriminatory acts. First, Plaintiffs have alleged that Ziskind continued to advertise the property for sale or rent on Craigslist even after the owners informed Dixon that the property was no longer available. Second, Ziskind responded to Tester #1's phone message asking for an application by making an appointment to meet, while Tester #2 was offered the immediate opportunity to rent the property, without an application, a day earlier. Additionally, after failing to keep his original appointment with Tester #1, Ziskind called a week later and informed Tester #1 that the Muchnik's had decided to sell, the very reason given by the Muchniks for rejecting Dixon, a month earlier.

Ziskind's arguments that he had no knowledge of any of the Plaintiffs' racial background is, at this stage, insufficient to warrant dismissal. Ziskind describes Plaintiffs' Complaint as alleging only that "he somehow knew, by the tone of voice of the telephone callers, what race they were." Ziskind is correct that unless Plaintiffs can demonstrate that

8

he had knowledge of Dixon and the testers racial background, Plaintiffs cannot prevail on their FHA claim. See Mitchell, 350 F.3d at 49 ("The plaintiff bears the ultimate burden of proving, by a preponderance of the evidence, that the defendants' challenged actions were motivated by discrimination; without some evidence of knowledge of the prospective buyers' racial identity, it is impossible to infer such motivation."). However, Ziskind mischaracterizes Plaintiffs' Complaint. The Complaint alleges that all the Defendants were involved in informing Tester #1 that she would need to fill out an application, but offering to rent to the Caucasian Tester #2 without such an application. (Comp. ¶ 42.) This suffices to give "defendant fair notice of what the claim is and the grounds upon which it rests." Leibowitz v. Cornell Univ., 445 F.3d 586, 591 (2d Cir. 2006).

Moreover, Plaintiffs have sufficiently pled facts showing Ziskind's involvement with the Muchniks to establish that he may have knowingly acted at the behest of defendants engaged in a discriminatory practice. Ziskind was the listed contact on the property's Craigslist advertisement. He organized viewings of the property, and carried out the Muchnik's instructions following such meetings. He also appears to have been responsible for providing rental applications. Ziskind also knowingly treated the various applicants differently, agreeing to meet in response to a request for an application in one case, while conveying the Muchnik's wish to rent immediately to another. Finally, Ziskind continued advertising the property even after Dixon had been informed that the Muchnik's intended to sell the property. Although Plaintiffs may ultimately fall short of their burden and fail to show that Ziskind knew that the Muchnik's were discriminating based on race, the Complaint entitles Plaintiffs to explore the extent of Ziskind's awareness. See Lax, 2011 WL 4425507, at *9 (denying motion to dismiss as to disclosed agents where plaintiff

showed agents were involved in application process); Carpenter v. Churchville Greene Homeowner's Ass'n, Inc., No. 09-CV-6552, 2011 WL 710204, at *5 (W.D.N.Y. Feb. 22, 2011) (denying agents' motion for summary judgment and granting request to continue discovery to permit plaintiffs to find evidence showing independent discriminatory acts by agents); Elmowitz v. Executive Towers at Lido, LLC, 571 F. Supp. 2d 370, 376 (E.D.N.Y. 2008) (plaintiff satisfied pleading burden by showing that he was member of protected class, had the intent and ability to renew his lease, was not permitted to do so, and defendant intended to continue renting apartment to others). Plaintiffs' allegations make it thoroughly plausible that Ziskind, through his relationship with the Muchniks and by the carrying out of their instructions was well-aware that the turned-away applicants were African-American. They certainly "raise a right to relief above the speculative level." Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008) (quoting Twombly, 127 S. Ct. at 1965).

Ziskind's only other argument is that "[t]he Acts in question do not even apply to single family homes, where the owners are not in the real estate business" citing to 42 U.S.C. § 3603(b)(1) and N.Y. Exec. Law. § 295(5)(a). (Memorandum of Law, Docket No. 11, 2.) "Section 3603(b)(1) provides an exemption for any single-family house sold or rented by an owner provided that four requirements are satisfied." Lincoln v. Case, 340 F.3d 283, 287 (5th Cir. 2003) (quotation marks omitted). These exemptions "are crafted narrowly and the owner is prohibited from using any rental services of a broker or agent, or advertising, posting or publicizing an intent to discriminate." Massaro v. Mainlands Section 1 & 2 Civic Ass'n, Inc., 3 F.3d 1472, 1477 (11th Cir. 1993); 42 U.S.C. § 3603(b)(1) (single-family home must be rented or sold "without the use in any manner of the sales or

rental facilities or the sales or rental services of any real estate broker, agent, or saleman, or of such facilities or services of any person in the business of selling or renting dwellings . . . ."). "The single-family dwelling owner can escape the rigors of Section 3604(a) only if he goes his discriminatory way alone." Singleton v. Gendason, 545 F.2d 1224, 1227 (9th Cir. 1976).

Plaintiffs' Complaint clearly alleges that Ziskind was a licensed real estate agent and held himself out as a rental agent representing the Muchniks. (Comp. ¶ 12.) Having opted not to convert this motion into one for summary judgment, these allegations are sufficient, at this point, to preserve Plaintiffs' FHA claim against Ziskind. See Taylor v. Messmer, No. 02:09-cv-1116, 2010 WL 607089, at *9 (applying exception where amended complaint failed to allege that defendant was real estate broker, agent, or salesman).[3] Similarly, Plaintiffs' NYHRL claim survives Defendant's motion. N.Y. Exec. Law § 296(5)(a) provides four circumstances in which its anti-discrimination provisions shall not apply.[4] Ziskind does

---

[3]Among the exhibits attached to his motion, Ziskind submits evidence that his real estate brokers license has expired. Even if this court were to consider submissions outside the pleadings, given the narrowness with which § 3603's exemptions are drafted and interpreted, this Court concludes that this fact would not necessarily exempt Ziskind. "[T]he question whether an agency relationship exists for purposes of the Fair Housing Act is determined under federal law" which provides that the three elements a plaintiff must show to establish an agency relationship are "(1) the manifestation by the principal that the agent shall act for him; (2) the agent's acceptance of the undertaking; and (3) the understanding of the parties that the principal is to be in control of the undertaking." Cleveland v. Caplaw Enters., 448 F.3d 518, 522 (2d Cir. 2006) (quoting Cabrera v. Jakabovitz, 24 F.3d 372, 385-86 (2d Cir. 1994)) (internal quotation marks omitted). Moreover, the terms broker and agent are defined to include "any person authorized to perform an action on behalf of another person regarding any matter related to the sale or rental of dwellings, including offers, solicitations or contracts and the administration of matters regarding such offers, solicitations or contracts or any residential real estate-related transactions. 24 C.F.R. § 100.20; see also Sams v. U.S. Dep't of Housing & Urban Dev., 76 F.3d 375, at *3 n. 5 (4th Cir. 1996). Here, it is undisputed that the Mochniks asked Ziskind to assist them in renting or selling the property and that Ziskind agreed to do so. There is further no dispute that Mochniks, as the principals, retained the ultimate authority to rent or sell the property and directed Ziskind to make offers on their behalf. This is sufficient to show that Ziskind acted as the Muchnik's agent.

[4]Pursuant to § 296(5)(a) "[t]he provisions of this paragraph (a) shall not apply (1) to the rental of a housing accommodation in a building which contains housing accommodations for not more than two families living independently of each other, if the owner resides in one of such housing accommodations,


not specify which of the four exceptions applies to him, and a brief review of § 296(5)(a) does not clarify the matter. Accordingly, dismissal of Plaintiffs' NYHRL claim is not warranted.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is denied.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion to Dismiss (Docket No. 11) is DENIED.

SO ORDERED.

Dated: December 15, 2011
        Buffalo, New York

                                                    /William M. Skretny
                                                    WILLIAM M. SKRETNY
                                                              Chief Judge
                                                United States District Court

---

(2) to the restriction of the rental of all rooms in a housing accommodation to individuals of the same sex or (3) to the rental of a room or rooms in a housing accommodation, if such rental is by the occupant of the housing accommodation or by the owner of the housing accommodation and the owner resides in such housing accommodation or (4) solely with respect to age and familial status to the restriction of the sale, rental or lease of housing accommodations exclusively to persons sixty-two years of age or older and the spouse of any such person, or for housing intended and operated for occupancy by at least one person fifty-five years of age or older per unit."